# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Civil Action Number:

PEGGY ANNE KELLEY

      Plaintiff,

vs.

CITY OF ALTAMONTE SPRINGS,
municipal government

      Defendant.



---

## COMPLAINT

---

Plaintiff, PEGGY ANNE KELLEY, by and through her undersigned counsel, hereby files this Complaint and sues the CITY OF ALTAMONTE SPRINGS for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title II of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§12131-12133 ("ADA") and compensatory and punitive damages pursuant to the Florida Civil Rights Act as codified in Florida Statutes Chapter §760, specifically, F.S. §760.08 and alleges:

### JURISDICTION AND PARTIES

1.     This is an action for declaratory and injunctive relief pursuant to Title II of the Americans With Disabilities Act, 42 U.S.C. §§12131-12133 ("ADA") and 28 C.F.R. Part 35 and supplemental jurisdiction over the related state law claim pursuant to 28 U.S.C. §1367.

2.     This Court is vested with original jurisdiction under 28 U.S.C. §1331.

3.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b) in that all events giving rise to this lawsuit occurred in the Middle District of Florida.

4.     The remedies provided by Florida Statute §760 are not exclusive, and state administrative remedies need not be exhausted in connection with suits brought under the ADA.

5.     PEGGY ANNE KELLEY (also referenced herein as "Plaintiff") was (and is currently) a resident of the state of Florida who suffers from what constitutes a "qualified disability" under the ADA.  The Plaintiff is (and has been) afflicted with rheumatoid arthritis and is mobility impaired. The Plaintiff's disability limits major life activities, and she requires the assistance of an aid for most daily functions and relies on transportation through medical transport service or other specialized means due to the fact that she is confined to a power-assist wheelchair.  The Plaintiff's disability is defined in 28 C.F.R. §35.104 (1)(ii); therefore the Plaintiff suffers from a disability covered by the protected class of disabled persons under the ADA and by Florida Statute §760.02(6).

6.     The CITY OF ALTAMONTE SPRINGS (also referenced as "Defendant") is a local (municipal) government body responsible for providing parks and recreation to citizens, residents, and visitors to the municipality of Altamonte Springs, Florida, and is within the jurisdiction of this court as a public entity subject to 42. U.S.C. §12131(1)(b).

## FACTS

7.     At all times material hereto, the Defendant was (and is) a municipal governmental body owning and operating recreational facilities, such as the Altamonte Springs Therapeutic Pool.

8.     The Defendant's Altamonte Springs Therapeutic Pool (also referenced herein as "therapeutic pool", and/or "pool") is located at 624 Bills Lane, Altamonte Springs Florida 32714, and is a place of public accommodation subject to the requirements of Title II of the ADA and its implementing regulation; 42 U.S.C. §§12131-12133 and the Florida Civil Rights Act, codified as Title XLIV.

9.     The Defendant's therapeutic pool provides services, programs, and activities to the general public which subjects the Defendant, a public entity and also the owner and operator of the therapeutic pool to F.S. Chapter 760.

10.     The Plaintiff's medical providers have recommended and prescribed that the Plaintiff engages in water therapy. On this basis, the Plaintiff obtained a membership[1] to the Defendant's therapeutic pool in January of 2014.   Therefore, the Plaintiff has been utilizing the services, facilities, and accommodations of the Defendant's therapeutic pool since January 2014.

11.     Due to her disability and mobility issues, the Plaintiff has established a set schedule to utilize the therapeutic pool which coordinates with her private duty aid (assists Plaintiff in dressing and entry/exit of the pool) and with the specialized medical transportation she must utilize to be transported to the therapeutic pool from her residence.

12.     Since January 2014, Plaintiff's schedule for water therapy at the Defendant's therapeutic pool has been is Monday, Wednesday, and Friday mornings. The time of Plaintiff's arrival as the therapeutic pool with her private duty aid is between 9:00 am and 9:30 am, so that she is in the pool when the 'free swim' period commences at 9:40 until 10:30 am in order to be ready for 11:00 am medical transportation return to

---

[1] Memberships are available to the general public for a user fee of $150/year.

3

her residence prior to noon in order to be dressed for lunch and then for the dismissal of her private duty aide.

13.      Plaintiff has adhered to the schedule delineated at paragraph 12 without incident until October 27, 2014, when Defendant's representative[2] (also referred to as "Defendant Representative Simpson") told the Plaintiff that she was not permitted to use the pool wheelchair lift to enter the therapeutic pool until the arthritis therapy class which she was teaching was completed.

14.      Due to the Defendant's failure to accommodate the Plaintiff, commencing October 27, 2014 and the Mondays thereafter following[3], the Plaintiff has been denied entry to the therapeutic pool by Defendant Representative Simpson. Defendant Representative Simpson stated that Plaintiff could not utilize the wheelchair pool lift while she was conducting the arthritis therapy class.

15.      Defendant Representative Simpson's failure and refused to allow the Plaintiff entry to the therapeutic pool combined with Defendant Representative Simpson's penchant with holding the arthritis therapy class beyond the scheduled 'end' time has resulted in the Plaintiff being denied access to the therapy pool for upwards of thirty (30) minutes.

16.      Since the Plaintiff is on a strict schedule for her time at the therapeutic pool, the fact that the Plaintiff has been denied entry into the therapeutic pool in order to commence the scheduled 'free swim' section of time, the Defendant, a public entity, (through Representative Simpson) has denied the Plaintiff entry to the therapeutic pool

---

[2] A swimming instructor teaching the Monday arthritis therapy class in the pool
[3] Specifically, November 3, 2014

and therefore has denied the Plaintiff use of the public entity's services, programs and/or activities.

17.     The Plaintiff asked Defendant Representative Simpson to permit her to use the pool wheelchair lift because the location of the arthritis therapy class is at the opposite end of the pool as the location of the pool wheelchair lift. Therefore (Plaintiff reasoned), there would be no disruption of the arthritis therapy class.  Further, other members of the general public were entering the pool and using the pool simultaneously with the arthritis therapy class (albeit, at a location in the pool away from the class).

18.     Undaunted by Plaintiff's disability and her special needs, Defendant Representative Simpson continued to deny the Plaintiff access to the therapeutic pool by denying the Plaintiff the right to use the pool wheelchair lift at the opposite end of the therapeutic pool as the arthritis class which she (Representative Simpson) was teaching.

19.     Defendant Representative Simpson's failure and refusal to permit use of the pool wheelchair lift is not supported by the fact that the arthritis class instructor who teaches on the other mornings[4] when the Plaintiff comes to use the therapeutic pool allows the Plaintiff to use the pool wheelchair lift while she is teaching the same arthritis therapy class.

20.     Following Representative Janice Simpson's refusal to accommodate the Plaintiff, the Plaintiff communicated with Defendant's representatives Debbie Heins (recreation supervisor for the therapeutic pool), Ryan Thompson (recreation division manager for the Defendant), both of which are in a supervisory capacity over Defendant Representative Simpson. However, neither representative would intervene to require Defendant Representative Simpson to permit the Plaintiff to use the pool wheelchair lift.

---

[4] Instructor Debbie Harger-Koperski

5

21.     The Plaintiff communicated to both Defendant's representatives Debbie

Heins and Ryan Thompson  the following facts:

   a) that the pool wheelchair lift was at the opposite end of the pool from the arthritis
      therapy class,

   b) that other members of the general public were also in the pool during the arthritis
      therapy class,

   c) that other members of the general public were entering and existing the pool
      during the arthritis therapy class,

   d) that no swimmer or participant in the arthritis therapy class had ever complained
      of another swimmer using the pool wheelchair lift during the class, and

   e) that the other swimming instructors permitted the use of the pool wheelchair lift
      while the arthritis therapy class was in session.

22.     The Plaintiff also communicated to both Defendant's representatives Debbie Heins

and Ryan Thompson as to the following facts:

   a) that the Plaintiff has limited time to use the therapeutic pool due to her special needs
      (disability, mobility, transportation schedule, and availability of private duty aide),

   b) that the Plaintiff cannot use the therapeutic pool in the afternoon as she is strongest for
      swimming in the mornings,

   c) that the Plaintiff cannot change swimming days from Monday to 'Tuesday' or 'Thursday',
      because she cannot swim two days in a row due to her disability, and

   d) that the M-W-F schedule which the Plaintiff has maintained since January 2014 is best
      suited for her therapy needs.

23.     Undaunted by Plaintiff's disability and special needs, Defendant

representatives Debbie Heins and Ryan Thompson stated that the Plaintiff should re-

arrange her transportation and/or reschedule her days of therapeutic use of the pool in

order to obtain at least 40 minutes of use of the pool during the 'free swim' period.

Defendant representatives Debbie Heins and Ryan Thompson failed and refused to

accommodate the Plaintiff when accommodating the Plaintiff would require a simple instruction to Defendant Representative Simpson to permit the Plaintiff to enter the therapeutic pool using the pool wheelchair lift.

24.     Therefore, since October 27, 2014 and the Mondays thereafter following, the Plaintiff has been denied timely entry into the therapeutic pool, and has been embarrassed and humiliated by the treatment she has received at the therapeutic pool.

25.     The Defendant's representatives have at all times material hereto, acted with apparent, and full power and authority and as such, their actions represent the actions of the Defendant. As such the Defendant's behavior and actions was/is unreasonable and discriminatory, and as a result, the Plaintiff was/is discriminated against and effectively denied entry to the public entity's therapeutic pool.

26.     The Defendant is a public entity, and as such is operated by individuals/representatives whom are well aware of the necessity of compliance with the requirements for the need to provide equal access to individuals with disabilities in accordance with the ADA. The Defendant has failed and refused to follow the guidelines and requirements for the provision of equal access to individuals with disabilities in accordance with the ADA at its therapeutic pool.

27.     The Defendant's failure to reasonably accommodate individuals with disabilities is willful, malicious, and oppressive and in complete disregard for the rights of the Plaintiff and in violation of 28 C.F.R. § 35.130(a) and § 35.137(a).

28.     This discrimination resulted in the Plaintiff being denied full and equal access to, and full and equal enjoyment of, the therapeutic pool, which is owned and/or operated by a public entity (the Defendant), which is the subject of this suit.

7

29.    As a result of the Defendant's discrimination, the Plaintiff suffered loss of dignity, mental anguish and other tangible injuries.

30.    The Plaintiff has been utilizing the therapeutic pool since January 2014, and continues to desire to utilize the therapeutic pool on Mondays, Wednesdays and Fridays, but Plaintiff continues to be injured in that she is concerned that she will again be discriminated against on Mondays by the failure of the Defendant to permit the Plaintiff entry into the therapeutic pool using the pool wheelchair lift in a timely manner in order that she can undergo the full measure of prescribed water therapy, all in violation of the 28 C.F.R. § 35.137(a) and state statutes.

31.    Plaintiff has retained the law offices of Scott R. Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – PUBLIC POOL ACCESS - VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

32.    Plaintiff realleges and incorporates by reference the allegations set forth in ¶¶s 1 – 31 herein above.

33.    42 U.S.C. §12131 (1)(b) states that a public entity includes any department of a state or local government.  The Defendant is a local government, and the therapeutic pool is within the Department of Recreation of the Defendant local government, therefore is subject to the prevue of Title II of the ADA.

34.    28 C.F.R. §35.130 states that a public entity cannot deny a qualified individual with a disability the benefits of services, programs or activities on the basis of disability.

35.     28 C.F.R. §35.130(b)(1)(i) states that a public entity may not deny an individual the opportunity to participate in or benefit from aid, benefit, or service. In the instant case, the Defendant denied the Plaintiff the opportunity to utilize the therapeutic pool for the full allotted time permitted by the schedule due to Defendant's representative's refusal to allow the Defendant to use the pool wheelchair lift at a particular time.

36.     28 C.F.R. §35.130(b)(1)(ii) states that a public entity may not provide unequal aid, benefit, or service to a disabled individual. In the instant case, the Defendant failed and refused to permit the Plaintiff entry into the therapeutic pool when the general public was given the opportunity to enter the therapeutic pool

37.     28 C.F.R. §35.130(b)(1)(vii) states that a public entity may not limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service. In the instant case, the Defendant failed and refused to permit the Defendant entry to the therapeutic pool at the time that members of the general public were permitted entry into the therapeutic pool, and in so doing denied the Plaintiff the right to the enjoy the pool the same amount of time as the general public.

38.     While the Defendant has provided access to individuals with disabilities by installing a pool wheelchair lift in its pool, the Defendant's representatives have failed and refused to permit the Plaintiff to use the pool wheelchair lift at specific times and thus have prevented equal access to the public entity's therapeutic pool.

39.     Refusal of the Defendant to permit the Plaintiff to enter the therapeutic pool using the pool wheelchair lift while an arthritis therapy class was in session at the

opposite end of the pool (when members of the general public were also using the therapeutic pool but not in the arthritis therapy class) is tantamount to refusing to admit the Plaintiff to the therapeutic pool.

40.     Plaintiff's disability of rheumatoid arthritis limits major life activities including her ability to walk and enter and exit a swimming pool by walking into and out of the swimming pool. Therefore, Plaintiff is an individual with a disability under Title II of the "ADA", 28 C.F.R. §35.104(1)(ii). Thus, Plaintiff is a qualified individual with a disability and is entitled to the protections of the ADA under 42 U.S.C. §12131, et. seq.

41.     Public entities are required to provide full and equal enjoyment of their services, programs, and activities in the most integrated setting appropriate to people with disabilities. 42 U.S.C. §12131, et. seq.; 28 C.F.R. Part 35. Specifically the public entity must:

        a)     Ensure that no individual is discriminated against on the basis of disability or excluded from participation or denied the benefits of services, programs, or activities. 28 C.F.R. §35.130(a),

        b)     Ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals unless the public entity can demonstrate that taking those steps to modify policies, practices, or procedures would fundamentally alter the nature of the service, program, or activity. 28 C.F.R. §35.130(b)(7).

        c)     Ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals unless the public entity can demonstrate that legitimate safety requirements are necessary

for safe operation. Any safety requirements must be based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities; 28 C.F.R. §35.130(h).

42.    By the Defendant's blatant discrimination, by its completely unreasonable failure and refusal to allow Plaintiff entry to its therapeutic pool during such time that the general public had access by denying the Plaintiff the use of the pool wheelchair lift, the Defendant has violated Title II of the ADA in numerous ways, including discriminatory action which occurred when the Defendant:

a)    Failed to maintain policies and procedures to ensure compliance with Title II of the ADA and of 28 C.F.R. §35.130; specifically policies that provide equal access to its therapeutic pool by individuals with disabilities,

b)    Excluded Plaintiff from the therapeutic pool by virtue of the fact that Defendant failed and refused to permit the Plaintiff access to the pool area to use the pool wheelchair lift in order to gain entry into the pool, and in so acting, failed to permit the Plaintiff and her mobility device in the areas of the pool which were open to the general public, in violation of 28 C.F.R. §35.137,

c)    Excluded the Plaintiff from entry to the pool during such time that the general public had access to the pool, which was the consequence of Defendant's denying the Plaintiff the ability use of the pool wheelchair lift (during specific times when the general public was using the pool), in violation of 28 C.F.R. §35.149

d)    Denied full and equal access to, and full and equal enjoyment of, services, programs, and activities of the public entity's therapeutic pool in violation of 42 U.S.C. §12132.

43.     Pursuant to 42 U.S.C. §12133, this Court is vested with the authority to grant the Plaintiff injunctive relief; including an order to require the Defendant (a public entity) to assure that its pool is accessible to, and useable by, individuals with disabilities including those individuals with disabilities who are mobility impaired and require the use of the wheelchair lift to enter and exit the pool[5].

44.     The Court is vested with the authority to require the Defendant (a public entity) to assure that its therapeutic pool accommodates mobility impaired individuals with disability(ies) who require access into and out of the therapeutic pool via the pool wheelchair lift.

**WHEREFORE,** Plaintiff PEGGY ANNE KELLEY respectfully prays that this Court grant the following relief against Defendant CITY OF ALTAMONTE SPRINGS, including entering a declaratory judgment, pursuant to Rule 57 of the FRCP stating that the Defendant's practices, policies, and procedures have subjected Plaintiff to discrimination in violation of Title II of the ADA, and permanently enjoin the Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from the Defendant's therapeutic pool. This includes entry of a permanent injunction ordering the Defendant CITY OF ALTAMONTE SPRINGS;

a)      To cease discrimination against the Plaintiff and other disabled persons who are mobility impaired;

b)      To promulgate and comply with policies and procedures to ensure that the Defendant and its staff and representatives do not discriminate against

---

[5] at those times when the general public is allowed to enter the pool, and throughout the times that the general public is able to use the pool

12

individuals who are disabled and who are mobility impaired and to permit entry into the therapeutic pool via use of the pool wheelchair lift at any and all times that the therapeutic pool is permitting entry of members of the general public into the therapeutic pool;

c)      Award reasonable costs and attorneys fees; and

d)      Award any and all other relief that may be necessary and appropriate.

## COUNT II - VIOLATION OF FLORIDA STATUTE §760.08

45.      Plaintiff realleges and incorporates by reference the allegations set forth in ¶¶s 1 – 31 above.

46.      The Defendant has violated Florida Statute §760.08, which provides all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, and advantages in any of public accommodation, without discrimination or segregation on the grounds of handicap.

47.      The violations of Florida law were deliberate and knowing.

**WHEREFORE,** Plaintiff PEGGY ANNE KELLEY respectfully prays that this Court grant the following relief against the Defendant CITY OF ALTAMONTE SPRINGS, including compensatory damages, damages for intangible injuries, punitive damages, costs including reasonable attorney's fees and interest and for the following injunctive relief and declaratory relief:

a)      A declaration that the policies and procedures of  the Defendant violated Florida Statue §760.08 in that the Defendant failed to consider and accommodate the needs of disabled persons to the full extent required by Florida law.

13

b)      An Order mandating that the Defendant   train its employees, independent contractors, and management staff, to comply with all appropriate laws;

c)      An Order mandating that Defendant revise its policies, practices, and procedures toward persons with disabilities and undertake and complete corrective measures to provide equal access to individuals with disabilities within a reasonable time;

d)      An Order mandating that Defendant expeditiously make all reasonable and appropriate modifications in their policies, practices, and procedures toward persons with disabilities and take all such steps as are reasonable and necessary to ensure that persons with disabilities are no longer excluded, denied access, segregated or otherwise discriminated against or treated differently than from the general public;

e)      Award compensatory damages including but not limited to mental anguish, loss of dignity, and any other intangible injuries;

f)      Award reasonable costs and attorneys fees; and

g)      Award any and all other relief that may be necessary and appropriate.

Dated this December 8, 2013

Respectfully submitted,

Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*

14